Good morning, Your Honors. I am Tanya Whiteleather. I represent S.L., a student with a disability, who was the petitioner and plaintiff in the underlying matters and is the appellant herein. May it please the Court. There is a long history which I have detailed in the briefing. This matter originally started in 2005, morphed into a matter in 2007. The Court, I know, is aware of the settlement agreements and the issues that arose. Over the period, we have gone up for an appeal, been remanded, finally had a hearing at the end of 2010-2011. And from there, that really is the basis for this appeal. The due process administrative law judge from OAH, the Office of Administrative Hearings, found that the student was denied a fate for the period at issue, 07-08. There was no confusion about the finding. And upon the reimbursement requests, which included reimbursement for the private school, the two one-to-one aids, speech and language services, and the trailer. But one thing I couldn't tell from the brief was, or in the record, was, was there any reason that she couldn't have had the same one-on-one aids in the public school classroom, doing the same thing? Those were never offered. That was the problem. From the date of the settlement, in general. I know, but could she? It wasn't offered, but could she have just paid the same aid she paid and gone after that money in the public school classroom? That is not, I've never seen that done, Your Honor. Never seen a parent allowed to pay for a private service and bring that in to give an aid and have the aid follow a public school teacher's directions. Was it attempted? It was not attempted. The way that the IDEA and IEPs are set out is that the school district makes an offer of whatever it's going to provide in this case, and the parent then reacts or responds to that. There was never an offer. That was the basis of this. In the previous year, they had offered aids, had they not? In previous years, there were various offers, yes. Including aids. I think they had at one point, three years previously, discussed having an aid. But I don't think that in the past years there had been an offer of aid. None of that was covered in this due process hearing. Does that answer your question, Your Honor? It does. I mean, it's an interesting problem because the school itself was not providing special education, but it was providing education, which was being supplemented. So the package was what she was getting. And the question is, could she have gotten that package in the public school, and that's what I'm confused about. Well, the first, the very initial step to getting the package in the public school is to have an offer. If the public school makes no offer, which was the finding of the OAH administrative law judge, then the parent can't even consider providing the aid privately. The parent can only respond to what's offered, and there was no offer. Well, I don't know if that's correct. Your client chose to make this arrangement for her child, but I joined Judge Berzon in questioning why it couldn't have been established in a different setting, in a public school setting. It doesn't sound like there was any discussion of it. The problem was, if I may go back, I have to go back to the facts a little. There was a settlement agreement that indicated the parent would cooperate, the district would assess, and make an offer of faith. That was the basis of the due process complaint that was originally dismissed by the Administrative Hearing Office. The parent questioned the number of hours and received a letter, sorry, you're not cooperating, we're not even going to assess. The district has never assessed. Right. But at that point, we know the history. But at that point, then your client made a plan. And the plan didn't include the public school. That's all. I think we're, I don't mean to belabor the point. And I don't either. I just want to be clear that the parent can't march into the public school and say, I am going to, there's nothing in any law. We didn't suggest that, whether she demanded, the question was whether she ever asked, whether there was any discussion. And my understanding is there wasn't. I don't think it got to that point. That would have been discussed had there been an IEP meeting. And if the district had said, here is our offer, whatever that may have been, I'm certain that it could have been discussed. But because of the district's actions, refusal to assess and to convene an IEP to make an offer, it couldn't happen through no fault of the parent. The biggest concern in this manner for this appeal, and I'm going to take the substantive and then go to the appeal or the motion on attorney's fees, the first has to do with Covington. And Covington, the Covington case, it's an eastern district case on which the administrative law judge and the district court relied. Covington looks to a requirement that is not laid forth in IDEA or the supporting authorities. Looks to special education being provided by the private school, having special education programs to meet the child's needs. And unfortunately, that is not the standard. Carter, Burlington Union, and the CB versus Garden Grove case that I participated in, do not find that to be the standard. The question is whether the services provided by the parents were appropriate. And in this case, while the private school did not have one-to-one aides, the private school did not offer IEPs, which it can't by definition. IEPs are for public schools only. The private school did not offer to pay for one-on-ones. The parents provided all of that. And that was the... But the private school did provide accommodations to have the aides participate, essentially. That is correct. But they would not pay for the aides. Pay for it, but they did adjust the program for the child in the classroom. That is absolutely correct. They allowed the aides to come in and to follow the curriculum laid forth by the credentialed teacher in the private school. So that is absolutely correct. And to be taken aside and to take tests at different times and things like that. Very much, yes. That is correct. Very much like what goes forth in many of our special ed programs for students who need that kind of accommodation or teaching. It is very common. The emphasis on Covington, however, was misplaced. This student, the facts established, made very good progress, blossomed. Her teacher testified in fourth grade, went on to fifth, completed her work with the program that was set forth with the one-to-one aides, and did very well. She went on to fifth grade. That is all you can ask for. We are not looking for the best. We don't look for Cadillac. Did she make progress? Yes, she did. So our contention in all of this, again, is that Covington is not an appropriate standard. It is the legal conclusions that, in fact, Covington were appropriate, should not be allowed to stand and should be reviewed de novo. That transportation, which we had requested and laid forth, even evidence at hearing and in the district court, has never yet been addressed. The full payment of the aides, which was testified to, has not been ordered. Payment for the private school was denied on the basis that it didn't have special education programs, which private schools do not. Special ed programs are public schools and didn't have special education credentialed teachers. As far as to the payments of the aide, the problem seemed to be an inadequate proof of the amount of money paid to them. Why isn't that within the discretion of the administrative law judge? I think it's within the reasonable discretion of the administrative law judge. Office of Administrative Hearings has a ---- Well, it doesn't seem very difficult to come up with a check, cancel checks that you paid the person. The parent, I agree, Your Honor, the parent did not have those. But we did have testimony from not only the parent, but from both of the aides as to the hourly rate, as to when they worked. But not even to the number of hours. I mean, it's just in vague generalities. I mean, but not actual hours. There were hours testified, the hours per day. They shared the hours. And then there was a calendar provided of the days that the student attended, including days that she missed, so that there was a calculation of the number of hours. The ---- I don't think the parent ---- Is there any reason why ---- I understand she didn't have them with her at the hearing. Couldn't she have just gone and gotten the checks and sent them in? She didn't have the copies, Your Honor. She did not have any of that. That doesn't make any sense. Why wouldn't she have the copies if they existed? I ---- she just did not have copies of any documents for those. And she pulled up the W-2s that she had. Those are actually year-to-year. They are not school-year documents. So she did provide some W-2s that indicated payment that she had provided to those individuals. And I agree. It was a concern. I don't think it defeats the request because testimony from the aides as to what they were paid and how often they worked established. And that was uncontradictory. But they would have records. I mean, it's ---- I guess what I'm saying is it's suspicious because either people ---- either they would have records or she would have records. They never ---- or nobody ever came in and said, you know, I worked so many hours a day so many weeks that year for a total of some number of hours. It never said that. I don't think there was a sum given. I think there was a day-to-day total. There were days identified, and that was provided at hearing. I agree. I don't think there was a total. But the item, the number of hours per calendar, the number of hours per day were identified, and that was not contradicted at the hearing. The, as far as ---- What did they do ---- what did the parents do about requesting reimbursement for the hours in the day where the ---- where aides didn't attend the certain classes, I think it was gym and music or something. There was no request for those hours because the ---- That had been deducted? The aides, they were asked to be reducted. The aides did not provide services. I think there was a religious class that they had testified to that they were not there. Well, maybe that was it. So where's the best place in the record where I can see your client's calculation? I will have to pull that up. That is in ---- I don't think there was an exact calculation, and I think you're correct. That's my problem. I can't find it. You're correct. All right. We had given the information. As far as the motion for fees, that was filed. There was a response. The order was issued on August 27th, and then on September 19th, within the 30 days, pursuant to Federal Rules of Civil Procedure 50AD, we requested that the court issue a formal judgment. And that was noticed, and the court did so. And within 30 days of the issuance of that formal judgment, then this appeal was filed to the court. Our concern, and we've laid it out in the brief, lies with the court's, district court's, determination of the percentage value, which is, we contend, inappropriate in civil rights matters. Obviously, if there's a change in anything, this may go back for additional attorneys' fees determinations. But to base the amount of attorneys' fees in this matter on the money recuperated by the parent is, again, not according to the authorities. The parent clearly prevailed in establishing that there was a denial of FAPE on one of the two alternative theories. One was failure to hold an IEP. The other was failure to even assess or offer. And the parent did prevail on that, which is substantial in this matter. So the actual consequences are how much are the amount of reimbursement. So I don't see why it was unreasonable. Because in a civil rights case, the reimbursement is not how you determine the success. The success. How should we determine the success? On the issues. What should we look at? On the issues. Well, you've got to help me out, then, because this is not a clean win-lose kind of a case. So what can you give me? What's your best shot about what you think your client should have been entitled to? The issue is whether or not the district denied a free appropriate public education for the 07-08 school year. And there were two alternative theories presented. And we prevailed on one. We did not prevail on the minor regarding whether an IEP should be held. But we prevailed on the major substantially in every aspect. So, ma'am, what do you think your client was entitled to? The $4,000 for the private school, the additional monies that were identified roughly, I believe it was $15,000 for the aid, and the transportation. And I'm sorry, I don't have that. I will have that figure. But we had laid that out at hearing with Google Maps and number of days of attendance to provide to the judge. And that was never even addressed at any point. Transportation. Transportation, yes. By way of fees, your request is? For a full payment of fees because of the appropriate clear success in establishing a denial of fate under one of the two alternative theories. The Court made a finding. I don't know if it was a finding, but the Court seemed to be concerned about that your client's conduct made the litigation more difficult. And, Linc, are you going to respond to that? There was no finding by anybody that the client had obstructed the process, that she was in fact at fault. There was evidence that she questioned. With regard to the fees, this is an important question. The fees were only for the court proceedings. Is that right, or did they go to the ALJ hearing, too? They go to the ALJ hearings as well. I see. But they don't go before the ALJ hearing. No. So far as there was any obstruction by your client that would have to go to the litigation, not just any pre-litigation period. If there were an obstruction, it would have been noted by the administrative law judge. I'm saying something else. Any obstruction to be relevant, I would assume, would have to be during the litigation, not before the litigation. It could be in the IEP process. It could be noted. It was never noted. And if I may, I think I'm almost out of time, but if you have no further questions, thank you. Thank you. May it please the Court, Kira Klatchko here for the appellees. I would like to begin by answering Judge Berzon's first question, which was about the one-on-one aids and whether that could have been provided in a public school setting. And I would say that initially when the student was attending the public school, the IEP process did not, after considering all the different factors and all of the different analyses, determine that she required one-on-one aids. And the duty of the public school, as you know, is just to provide FAPE. And the student didn't need one-on-one aids to get FAPE. And so when the parents unilaterally pulled the student out of the public school and put the student into private school, and this is a private school, the record seems quite clear based on the testimony of the one-on-one aids. Is your argument going to be that she didn't need aids? No, Your Honor. It's just in terms of the assessment that was completed, the initial assessment in 2004, 2005, that assessment was not that she needed one-on-one aids. Had the second assessment been fully completed, the 15, 12 to 15 hours of assessment, that might have been different. But as to that, the ALJ did find, and you have not cross-appealed anywhere, that that essentially was the fault of the school district. Not to push harder to assess the student. That's correct. And therefore not to provide FAPE. Correct. And clearly this child needed a basic – I mean, what she was getting in the private school, as I understand it, was a traditional mainstream curriculum with accommodations by the school to allow her to use a – the one-on-one aids that were separately provided by their parents. She needed both of those things, or all of those things, or at least nobody has proven that she didn't. So if the school district didn't offer her, or didn't – I mean, sort of cut off the process at an earlier stage so that she – it wasn't possible to develop that within the public school district, why isn't – why does it matter that the school wasn't providing the special education part, but it was providing the education part to some degree, and the accommodations to allow her to use the aid? It's the package that she needed. Well, I would take issue with the record, Your Honor, in terms of whether or not the school, the Arletia Perpetual Assumption, was in fact providing education. The testimony in the record, and it's at 7 ER 1402 to about 1436. It seems obvious that these aids were – as to what she was actually learning, the aids were not deciding that. She was – they were – they were using a curriculum. She was in the classroom, and she was taking tests by the school. So, yes, to some degree, they're obviously providing an education. Well, I'm not – I'm not sure that that's clear in the record. And the ALJ seems to feel – I'm sorry. Why isn't it clear in the record? Was she taking the – was the teacher – The teacher, Mrs. Conyer, was the actual teacher. Right. She was not allowed to interact with the student one-on-one basis. She didn't know what the student was learning. She didn't actually even know that the student – Yes, she did. She was giving the tests, and she was grading them. She said she was. Well, she didn't know whether the student had any disabilities at all, and then the aid – But she was giving the tests, and she was grading them. But the aid, Flores, testified that she was completing the student's work. And she testified that she was not allowed to discuss the student's work with the teacher, Mrs. Conyer, and the teacher said she could not discuss it with the aid. I don't like the way this was done, but clearly what – the content of what she was learning was being provided by the schools – by the school. It's not – it's not clear that she was learning anything. According to the aid, the aid finished the work, and the student was several grade levels behind and was, in fact, not benefitting. Maybe it was a – it didn't – first of all, the test seems to demonstrate that it did work. But whether it did work or it didn't work, it was going on, and they were providing the content, at least. They were providing the location. They were providing the testing. So they were – it just is a vast overstatement to say that they weren't providing anything. Well, the ALJ listened to the testimony and did not – the ALJ credited the testimony of the aid florist who seemed to suggest that not the student, but the aid florist clearly could not have done this on her own. She – she didn't – she didn't decide what kind of – what math problem she was going to do or what – or what they were going to read or any of that. It appears again in the record that there is some evidence to support what the ALJ did and that there is evidence to support that the district court did not err in crediting that testimony. But the – but what they credited wasn't that the school provided nothing. It was that the school didn't provide special education, which is true. It didn't, but it accommodated the special education and it provided the content part of the education. Well, again, I would take issue with that. It doesn't – it doesn't seem clear to the record that the school – I mean, again, the teacher didn't even know that the child had a disability. But the school provided curriculum. But she knew that she was supposed to read X book and that she took a test on it. And again, Your Honor, it seems like the aides were a significant part of her ability to even take those tests. Well, maybe so. But still, the fact that the test was going to be on X and that she was going to read or have read to her or whatever this book was the school's – the school was doing it. And again, Your Honor, I would – I would say in the record that is not clear and the real question is in terms of your standard of review. I thought it was quite clear. I respect – I respectfully disagree. Counsel? Yes. Maybe it would be more productive if I could – Yes. Because this doesn't seem to be working so well for you. Yes, Your Honor. And I'd like to get to a different point that might be a little more fruitful, which is it seems to me that the school was – and I'll just join Judge Brewer's on this. The school was providing a setting, a classroom with other kids. Yes, Your Honor. And she had some socialization issues and was certainly providing a curriculum and lesson plans. And I fully appreciate that the record is quite unique in this regard because the aides were reporting to the parent, not to the teacher, and the teacher wasn't interacting directly with this child. I understand that. And I read Flores' testimony and I understand that she testified that she was, in fact, sometimes doing the work for the students. Yes, Your Honor. That isn't me. I think that's the picture. And that's, I think, why Judge Berzon – I don't want to speak for her, but it's certainly why I had the question, and I think she did, about the setting and whether this setting couldn't have been provided by a public school. It may have been, Your Honor. But they say it couldn't have been. So could you address that, that they weren't allowed to put their – or wouldn't have been allowed to put their privately hired aides in a public school? Well, in terms of the parent being able to select the aide and hire the aide, there's no testimony in the record about that. But in terms of the school providing an aide, certainly if it was appropriate, if it was required to give the student FAPE, they would have been able to provide it. That's why I think you're between a rock and a hard place, because the school district hadn't provided FAPE, and you're stuck with that. That's the – that's sort of where this case starts. Yes. And so the parents were left then to – I don't want to say fend for themselves, but to take the next step and to make some arrangements. And so if there really wasn't any opportunity where they could have placed this child in a public school with these private aides, then it seems to me that that's, you know, very difficult for them. And again, Your Honor, it seems that they could have – again, we didn't finish the assessment. We acknowledge that. We haven't appealed that. I mean, the goal of the school district is to make sure the child gets what the child needs to be educated. Right. So we don't dispute that. And the parents' conduct did play a role here. And that – Well, what do we do about that? That's tough. Yes. So, I mean, we're not contesting that there was a problem, but the parents' conduct here, it really, as the ALJ and the district court acknowledge, even in denying the  denied all attorneys' fees. So the parents – But the school didn't provide FAPE. Yes. So whether – you know, that's already been taken into account in making this determination. But it does allow the district court and the ALJ to reduce the amount of fees and to consider – I'm talking about this. What are we talking about? I mean, I don't understand why whatever conduct the parents may have engaged in before the litigation has – certainly has nothing to do with the fees. Why should it have anything to do with the fees? In terms of the attorneys' fees, Your Honor? Yes. Well, it has a great deal to do with the attorneys' fees. First of all, the parent lengthened the litigation, made the litigation more difficult. If you – and I'm sure you've reviewed the record. If you can see the deposition testimony and the testimony before the ALJ, the parent was not just zealously advocating, which, again, the school district doesn't have a problem with parents being involved. They want the parents to be involved. But there's a point at which parent involvement becomes not about the child, not about the student's education, but about the parent's involvement. And that was recognized by the ALJ and that was recognized by the district court, that the parent caused such a situation of confusion about whether the student could be assessed at all. That's all prior to the litigation. I'm talking about the litigation. Well, Your Honor, during the litigation, it appears that the parent was not responsive, didn't want to answer questions, prolonged the discovery process, was not forthcoming. That was all during the litigation. And what the notation was, and it was in a footnote in the district court's order on the fee issue, was that this conduct was severe enough. And this is what the statute allows for. If the parent acts unreasonably, then you can reduce the fees based on the unreasonable activity. And the parent acted unreasonably. And the court still said, but I'm going to award some attorney's fees because there was some level of success. It was not two issues raised. It was a whole series of issues. There was reimbursement for travel. There was reimbursement for the tuition. There was reimbursement for the uniforms. I mean, there was a whole series of things. And, again, we're not contesting that there was a denial of faith and this is that the school district should have pushed harder to assess the child. But this is an odd situation, as Judge Krusenke points out, where the school district was not just trying to kick this child out of the system, didn't want to provide assessment. The issue was that the parents felt that the school wanted to do too much assessment, which is an odd situation. There was no basis for that. Again, the parent acted unreasonably, demanding at one point to see the district. We know the record. Yes. What were the parents supposed to do? Well, again, Your Honor, no one's saying that they shouldn't zealously advocate. They should. But what counsel, but my client is, what was she supposed to do? She was supposed to, per the settlement agreement and per working with the district, work in good faith to try to get the child assessed. And she gave the distinct impression. Again, I still don't understand why any of that, and no distinction was made. Why is that relevant to the fees? Why no fees involved in that whole episode? Because, again, the whole litigation could have been avoided but for mother's conduct. That was the note by the district court, and that appears to be accurate. Again, the school district, in the first settlement agreement. Well, if that were true, then they wouldn't have found that the district denied her faith. I mean, the ultimate problem was the district never said, okay, bring the kid in the next day for an assessment. Well, the district sent letters saying, can you make it on these three or four dates? And then the mother wrote back saying, those are not the dates I gave you. You're violating my rights and not being respectful. That was a different issue. That was about when they were going to have a meeting. My understanding is they never actually set a date for an assessment. Your Honor, I believe the issue was the mother said instead of scheduling an assessment, she wanted to have an in-person meeting. Right. So they were trying to accommodate. Well, they didn't actually have that meeting. Well, I'm not sure that's, they attempted to have the meeting, and then the mother walked out when counsel came into the room saying that that violated her rights and that the school district was, I'm not sure what, some violation of her rights by virtue of the attorney being there. So in answer to Your Honor's question, Judge Christian, that what is a parent supposed to do? Again, zealous advocacy is fine, but there's a point when it's now not about the student and the student's education. It is about the parent. I know. I'm talking about setting up an arrangement for the child. They got aids for this child. Yes. I'm pleased to hear the district's not arguing this child did not need aids. Right. And they placed the child in a public school, and you don't want, forgive me, a private school, and district doesn't want to have to pay for the private school, basically. In terms of what she's supposed to do, it sounds like she really didn't have the option of placing her child in the public school with aids. Well, again, Your Honor, it seems like had we been able to finish the process, if she needed aids, she would have received aids in the public context. In terms of that particular private placement, again, we're contending that that was not an appropriate placement. What would have been? An educational environment that took into account the student's disabilities. And I'm making a distinction. I'm not saying that it had to be a special education program with IEPs. It didn't take into account her disabilities. Again, they didn't even know she had disabilities. But it did. So to play devil's advocate, to the extent she was set up with one-on-one aids, individualized instruction, why isn't, because that's what the opposing counsel is going to say, why wasn't that appropriate? Again, Your Honor, because really that's not the, without those aids providing the education, not providing assistance, it appeared from the testimony, and I know Judge Burson doesn't agree, but it appeared from the testimony to the ALJ and to the district court and to the district that those aids were providing the instruction only. It was a parallel, it was a parallel education. I believe that's what the court called it. So just help me out with this a little bit, because there are other specialized helpers who come into classrooms to help kids with content that is provided by a teacher. Sure. But they need extra help or extra time. It might be a speech therapist who's working with a child or any other, many other kinds of therapists, but the instruction is still the mainstream classroom lesson plan, if you will. Yes. So what's different about this? This is more like they put the child in a classroom at the private school and did home study. It just was in the building. Well, except that it wasn't just in the building, right? We've covered that. It's the teacher's lesson plan, even though the teacher didn't interact with the student. Didn't interact with the student, didn't, again, really know, maybe got the test, didn't know if the student was doing the work, didn't know if the student was following along. But excuse me. Again, she was tested repeatedly by the teacher. It's not clear that she did those tests without assistance from the record. And if she did, then I won't misrepresent the record. I don't know. It's not clear. Was she tested by the teacher or was the teacher grading the test? My impression was that the teacher was grading the paperwork because she wasn't able to sit for the standardized test and on all these kind of things. And I will note that. So she didn't sit for standardized tests. There was one standardized test she didn't sit for, but some she did. I think she was in most cases not permitted to sit for standardized tests, and the parent objected to that. There are all kinds of records, grades in the record of her scores in standardized tests, so she must have sat for them. And I apologize. My time is up, I know. But just to answer your question quickly, I believe the teacher's testimony was that the student was not to sit for the STAAR test. She may have sat for some tests, that's true, but a lot of it seemed to be based on the grades. And I would just note really quickly also in answer to Judge Christian's question, the student, after this happened with the school district, the student was removed from Our Lady of Assumption and now is educated at home with the use of AIDS, supporting, I think, our position. Thank you so much. Thank you. May I briefly? We'll give you a minute for rebuttal. Thank you. I will be very brief, Your Honors. The STAAR testing, just a quick note, the STAAR testing in the documents is not the statewide testing. It's a reading test. And there was testimony, I don't have the citation, that what the private school gave was a different statewide testing, and SL did participate in that. I don't have much to add. The total fees was a little over $92,000. There were attendance records provided in a Google Maps testimony I cannot point to, and my error in not having that at my fingertips. But Volume 3, ER 1435, pages 3 through 25 in Volume 5, ER 969 addressed the attendance and the parents' transportation. Only one of the aides said that she was doing work. The other aide said, no, this young lady was doing very well in the classes. There was one. I cannot hound that more sincerely. There was one issue. There were two alternative theories. We prevailed on the issue, and it was a good success. Counsel, the district court did make a finding about your client's conduct and unnecessarily prolonging the litigation. Could you just give me your best shot in responding to that? Absolutely. The one comment was that at a deposition, and I was present at the deposition, the parent had been given a document and had not identified it, not swiftly identified it. It was different from a comparable document. It didn't have the headings on. It wasn't signed. She indicated she didn't know if that were exactly the same. That was the citation by the district court that she was not acting reasonably. I know of no other statement other than that she had an unreasonable attitude, and this is in our brief, with regard to the amount of assessments and she was acting unreasonably. It's the parent who offered dates for assessments. Can I come on these dates? But by that time, the respondents, the districts, had already said, sorry, we're not going to do this, and they never did. So your position is that your client, that this was an abuse of discretion because the facts don't support this? Correct. I agree that there are times when parents obstruct the IEP process, and I'm not saying that the parent was an angel, but she did not obstruct the IEP process and the duty and the ability of the district to assess and to make an offer of faith. Thank you. Thank you, and this matter is submitted. We'll call the next item on the calendar. Desert Train v. City of Los Angeles. Thank you. Thank you. You may proceed.
judges: Pregerson, Berzon, Christen